Meserole v. Meserole.

---

MESEROLE *et al.*, appellants, v. MESEROLE *et al*.

*Will — construction of — disposal of entire estate — Suspension of power of alienation — accumulations.*

A testator by will directed his estate to be held in trust by his executors, and divided as follows: To J. three-fourteenths of the estate for life; upon J.'s death two-fourths of his share to E. during life, upon her death to the heirs of J.; one-fourth to each of the two sons of J. for life, and upon the death of either his share to the heirs of J. To E. two-fourteenths of the estate for life, upon E.'s death three-fifths of her share to J. for life, and one-fifth to each of the sons of J. for life, and on the death of any of the persons named, his part to go to the heirs of J. To M. three-fourteenths for life, on M.'s death one-fourth of her share to each of certain persons named for life, and on the death of either of said persons to his or her heirs. To each of

six persons named one-fourteenth of the estate for life; $1,000 out of the income of his or her share to be paid for the support, etc., of such person during minority; the remaining income to be accumulated, and upon each arriving at age the entire income of his or her share, and of the accumulations thereupon, to be paid him or her. Upon the death of either of the six his or her share to go to persons designated. Provision was made for the event of a death of any one named before he became entitled to take.

*Held*, (1) that the testator disposed of all his residuary estate ; (2) that the power of alienation was not unlawfully suspended ; and (3) that the direction to accumulate, during the minority of the legatees, the income of the six fourteenths, was not unlawful.

APPEAL from a decision of the special term construing a will and sustaining the validity of its provisions.

The plaintiffs, Abraham Meserole and others, bring the action for the construction of the will of one Abraham Meserole, admitted to probate in the city of New York on October 6, 1871. The testator left two children, his son and daughter, the defendants Jeremiah V. and Maria M., and three grandchildren, the plaintiffs. It is claimed in the complaint, that as to the residuum of the estate the testator died intestate, and the trusts and powers in respect to his residuary estate attempted to be covered by certain provisions of the will are illegal and void, and contrary to the statutes of this State. The terms of the provisions in question are fully set out in the opinion of the court.

*M. L. Townsend* and *Alvin C. Bradley*, for appellants.

*T. F. Jackson* and *E. More*, for respondents.

DANIELS, J. The testator left an estate of considerable magnitude, consisting of real and personal property. After the bequest of several legacies, concerning the validity of which no controversy exists, the testator gave, devised and bequeathed the residue and remainder of his real and personal estate to three executors, to take possession and hold the same and receive the rents, issues, profits and income thereof in the several shares and proportions, and for the respective periods afterward mentioned. He then directed that three equal fourteenth parts should be held by them for and during the natural life of his son, Jeremiah V. Meserole; two for that of his daughter-in-law, Evelina, wife of that son ; one for that of Alfred V.

VOL. III, N. Y. REP. — 25

Meserole, the son of his own son ; one for that of Abraham Meserole, another son of his own son ; three for that of his daughter, Maria M. Knapp ; one for that of each of her three daughters, and the remaining equal fourteenth for the life of his grandson, John Meserole Knapp. The same substantial directions were given by the testator, concerning the three shares provided for his three children. They are, that the rents, profits and income arising from each share shall be paid over by the executors to the beneficiaries, respectively, for the support of themselves and their families respectively. And the directions given are also identical concerning each of the one-fourteenths given by him to the executors for each of his six grandchildren. They are, that the executors should apply $1,000 each year for the support, maintenance and education of each grandchild, during the period of his or her minority, out of the rents, profits and income of the share required to be held by them for the use of such grandchild. The residue of the income of the share of each grandchild to be accumulated during the period of the minority of the grandchild from whose fourteenth the same shall be derived. And as each shall attain his or her majority, then from that period the entire rents, profits and income of his or her fourteenth, and of the accumulations added thereto, under the preceding direction, are to be paid over to each respectively for his or her support, and maintenance during the residue of his or her respective life.

At the decease of the testator's son, Jeremiah V. Meserole, whether before or after his own death, the three-fourteenths parts of the rents and profits provided for him as his share for life are required to be divided by the executors into four equal shares, and kept safely invested by them, and the interest and income from two of them paid over to the testator's daughter-in-law, Evelina Meserole, during her life, and at her decease the two shares themselves are directed to be divided and paid over among and to the lawful heirs of the testator's son, Jeremiah V. Meserole, in the same proportions as if he died intestate and possessed of such shares.

The other two shares created out of those fourteenths the executors are required to invest, one for each of the two sons of Jeremiah V. Meserole, and to pay over the interest and income of the share invested for each of such sons to him during his natural life, and on either's decease, all the property and money held in trust for him under the terms of the will, is directed to be divided and paid over among and to his lawful heirs, and if either of such sons shall die

before his father or mother, then the share he would otherwise have been entitled to, upon the decease of his surviving parent or parents, is directed to go to the lawful heirs of Jeremiah V. Meserole.

Upon the decease of the testator's daughter-in-law, Evelina, the two-fourteenths of his estate provided for her benefit for life are directed to be divided into five equal shares, three of them to be invested for, and the interest and income from the same paid over to his son, Jeremiah V. Meserole, during his life, and at his death the shares themselves divided between and paid over to his lawful heirs· The other two of these five shares are directed to be invested for the benefit of the two sons of Jeremiah V. Meserole, one for each, and the income and interest of each share paid over to the person for whom the investment is directed to be made during his natural life. The final distribution of the two shares, as the persons entitled to their income and interest may respectively die, is directed to be made among the lawful heirs of the testator's son, Jeremiah V. Meserole, by the provision already considered in another connection on that subject.

At the decease of the testator's daughter, Maria M. Knapp, the three-fourteenths of his estate — the rents, issues and profits of which are given to her for life — are required to be divided into four equal shares and invested, one for each of his grandchildren, Maria M., Evelina M., Katie L. and John Meserole Knapp, and the income and interest of such share paid over to the person for whom the investment is required to be made, during his or her natural life, and at the time of the decease of either of those four persons, if that should not occur during the life of their mother, Maria M. Knapp, the share provided for the person dying is given to his or her lawful heirs absolutely; but if either should die before their mother, then the fourth of the three-fourteenths provided to supply her share of rents, income and profits is directed to be divided among her lawful heirs; and upon the decease of either of these four grandchildren, the fourteenth of the testator's estate, directed by the will to be held in trust by the executors for each of them respectively, is absolutely given to his or her lawful heirs.

These provisions effectually dispose of all the residuary estate directed by the testator to be held in trust by his executors, if they are not in conflict with the provisions of the statutes limiting the period within which the power of alienation and absolute ownership of property may be suspended. The testator very clearly designed

to dispose of his real and personal estate by the provisions contained in his will, and to avoid intestacy as to any portion of it, and if the directions given by him are valid, that object has been accomplished.

From the analysis made of the directions contained in the will concerning the disposition of the residue of the testator's estate, it is apparent that the trust created in the rents, issues, income and profits of neither one of the shares provided for can extend beyond the duration of two lives in being at the time of his decease, and the lives by which the most extended limitations are restricted are those of the two beneficiaries themselves. Eight-fourteenths, constituting three specific shares, can only continue until the end of the two lives for the benefit of which each share is created, for by the division which it is provided shall be made of these three shares, as the life tenants of the rents, income and profits, of each may die, no portion into which the share itself is directed to be divided can extend beyond the life of the person who is to receive its rents, income and profits after such division may be made of it.

The other six-fourteenths are still farther restricted, for as each life tenant of a fourteenth part of the rents, income and profits may die, the trust in the share of such person will at once cease to exist according to the terms of the will, and it will become the absolute property of the lawful heirs whom it is provided shall receive it when the trust created in it shall end.

The testator's scheme was evidently to avoid the unlawful suspension of the power of alienation and absolute ownership in the trusts created in the residue of his estate, and to accomplish that result, while he gave the entire residue in trust to his executors, with full authority to continue and hold it together in one mass, he divided and disposed of the rents, issues and profits issuing from the same in such a manner that the existence of no share provided for could by any possibility transcend the statutory period.

But it is claimed that as portions of the mass of the estate must necessarily remain in the executor's hands, to supply the purposes of the trust, for a greater period than the duration of two lives in being at the creation of the trust, the disposition should be held to be unlawful. That consequence would have proved the same if a legal as well as equitable division of the estate had been made, for some shares, even then, would have extended through the existence of many lives in point of fact; but the statute does not render the disposition unlawful on account of that circumstance, as long as

the beneficial interest itself must determine with the lives of the two persons who are to successively enjoy the same interest. In such a disposition of the testator's property, although the executors hold it as one entire mass, an equitable division of it is made among the persons who are to receive defined and specific portions of its rents, income and profits; each beneficiary becomes, for the time being, the equitable owner of that portion of the estate from which his or her rents, income and profits are derived, and the property held in trust is, to that extent, held solely for the person benefited by so much of the trust.

It seems to have been supposed that the present case should be distinguished from those settling this principle by reason of the fact, that in them the testator designed to have his estate changed into personalty for the purposes of the trust. But that could make no difference in the principles to be applied, for if realty held as one mass in trust would violate the provision of the statute prescribing the limits beyond which the power of alienation cannot be suspended, the illegality could not be avoided by simply changing it into personalty, and in that form holding it for the same time in one similar mass. If the trust would be void as one affecting real estate, the same consequence would follow from the suspension of the power of absolute ownership in case it should be converted into personalty and the product were required to be held in trust for the same period of time. A change in the form of the property supporting the trust would not essentially change the principle applicable to it in this respect. 3 R. S. (5th ed.) 11, §§ 15, 16; id. 75, § 1. The principle governing both classes of cases must be in substance the same from the similarity of the provisions contained in the statutes relating to them; consequently such a separation and division of the equitable interests in the rents, income and profits, as have been held to constitute a valid disposition of the testator's personal estate, must be attended with the same result when they are made in the rents and profits of real estate, and under the authorities existing on that subject, it would seem to follow that the disposition which the testator made in this instance was a lawful and proper one so far as the objection now under consideration has assailed its validity. *Tucker* v. *Bishop*, 16 N. Y. 402; *Savage* v. *Burnham*, 17 id. 561; *Gilman* v. *Reddington*, 24 id. 9; *Everett* v. *Everett*, 29 id. 39.

The persons to whom the shares in the rents, income and profits

of the testator's residuary estate were given, for life, took several interests by the direct provisions of the will. These interests were in the nature of equitable estates in specific shares of the residue held by means of the intervention of the trust created for the individual benefit of each, rendering them equitably tenants in common for life in such residue. In effect, the estate was as completely divided between them as though given to them in direct terms as tenants in common, for, in theory, that was the substantial nature of the interests they were severally intended to derive under the terms of the will.

The accumulation of the rents, income and profits of the shares given in severalty to the testator's grandchildren was limited by the expiration of the minority of the respective minors for whose benefit it was directed, and the direction in that respect was not unlawful, because the fund accumulated during the period provided for was to be added to the principal of the minor's interest in the equitable estate. The statute nowhere prohibits such a disposition of the accumulated fund. It simply requires that it shall be for the benefit of the minor and terminate at the expiration of his or her minority, and that purpose is as clearly and literally observed where the amount accumulated is to be added to the principal of the minor's interest as it would be in case it were required to be paid over to him upon attaining his majority; but if it were not equally as beneficial, that would constitute no objection to the validity of the direction, for all that the statute requires is that the accumulation shall be for the benefit of the minor and terminate with his minority, and that object is secured where it is added to the principal, from which he is afterward to receive the interest and income. 3 R. S. (5th ed.) 13, § 47; id. 75, § 3.

It is unnecessary to consider the effect of the power of sale given to the executors by which they were authorized, and for some purposes it may have been contemplated that under it they might find it necessary to convert the realty into personalty, for it was optional merely and never exercised by the executors.

Neither can it be important to examine the effect attributable to the acts of the plaintiffs in accepting and receiving, without objection, the legacies provided for them by the will of the testator, nor the question whether the plaintiffs, as heirs at law, can properly maintain an action for the purpose of procuring a construction of the testator's will, or the judgment of the court on the validity of

the provisions contained in it for the disposition of his residuary estate. *Bailey* v. *Southwick*, 6 Lans. 356, 362, 363.

The right to maintain such an action in equity will probably be found to be limited to the executors or trustees themselves, and the persons specially authorized to do that under the act of 1853. (Laws 1853, chap. 238.)

The judgment pronounced in this case by the special term was right, and it should be affirmed.

DAVIS, P. J., and DONOHUE, J., concurred.

*Judgment affirmed.*